# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE ROWE COMPANIES | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 06-11142-SSM |
| | ) | |
| In re: | ) | |
| | ) | |
| ROWE FURNITURE, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 06-11143-SSM |
| | ) | |
| In re: | ) | |
| | ) | |
| STOREHOUSE, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 06-11144-SSM |
| | ) | |

**APPLICATION TO EMPLOY AND RETAIN FTI CONSULTING, INC. AS RESTRUCTURING ADVISORS AND CONSULTANTS TO THE DEBTORS PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE**

The Debtors[1] and debtors-in-possession in the above-captioned cases, by their undersigned counsel, hereby move the Court for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to 11 U.S.C. § 327(a), authorizing the employment and retention of FTI Consulting, Inc. together with its wholly owned subsidiaries, agents and

---

[1] The Debtors are the following entities: The Rowe Companies ("TRC"); Rowe Furniture, Inc. ("Rowe Furniture"); and Storehouse, Inc. ("Storehouse") (sometimes referred to collectively herein as the "Company").

H. Jason Gold, Va. Bar No. 19117
Valerie P. Morrison, Va. Bar No. 24565
Robert J. Butler, Va. Bar No. 67018
Dylan G. Trache, Va. Bar No. 45939
WILEY REIN & FIELDING LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia 22102
703.905.2800
*Counsel to the Debtors and Debtors-in-Possession*

independent contractors (collectively "FTI"), as limited scope restructuring advisors and consultants to the Debtors as of the Petition Date (as hereinafter defined). In support of this Application, the Debtors rely on the Declaration of Kevin Regan (the "Kevin Regan Declaration") and the Declaration of Garry W. Angle in Support of Chapter 11 Petitions and First Day Orders. In further support of this Application, the Debtors submit as follows:

## JURISDICTION

1. On September 18, 2006 (the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division (the "Court"), their respective voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") commencing the above-captioned chapter 11 cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have, pursuant to a separate motion, moved this Court for an order authorizing the joint administration of these chapter 11 cases.

2. Official creditors' committees have been appointed for Storehouse, Inc. and for Rowe Furniture, Inc. No trustee or examiner has been appointed.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2).

4. The statutory predicates for the relief requested herein are sections 327(a) of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

A. **Current Business Operations**

5. Rowe Furniture has been a leading manufacturer of fine upholstered furniture for the past 60 years. The Company began operations in 1946. Over the years the Company significantly grew, expanding its Virginia plant and adding a second factory in Missouri in 1968. In 1999, the Company added a retail segment through the acquisition of Storehouse, and the name of the Company changed from Rowe Furniture Corporation to The Rowe Companies. TRC owns 100% of the stock of Rowe Furniture and Storehouse.

6. Rowe Furniture, the manufacturing segment, produces quality upholstered furniture serving the middle and upper middle market primarily through home furnishings retailers throughout the United States, including Storehouse, which is its largest customer. Rowe Furniture owns four production facilities located in Elliston, Virginia, Salem, Virginia, Poplar Bluff, Missouri and Morehouse, Missouri. Two facilities manufacture upholstered furniture. The remaining two facilities manufacture frames and wood components in addition to kiln-drying lumber for outside customers.

7. Storehouse is a multi-channel, lifestyle home furnishings business consisting of approximately 70 retail home furnishings stores ranging in size from 4,000 to 18,000 square feet and located in the Southeast, Southwest and Mid-Atlantic markets, and three distribution centers. Storehouse also sells home furnishings through its catalogue and over the Internet.

8. The Company's headquarters is located in McLean, Virginia. TRC is a publicly traded company, listed on the American Stock Exchange. The Company employs approximately 2,100 full-time employees. None of the Company's employees are covered under a collective bargaining agreement.

**B.     Events Leading to the Filing of the Reorganization Cases**

9.     In the past few years, the manufacturing segment has faced increasing price competition from foreign manufacturers, particularly in Asia, which has negatively impacted sales. Manufacturing also experienced set backs implementing its Enterprise Resource Planning ("ERP") system in 2005, which resulted in disrupted product flow, reduced orders and lower shipments in 2005 and 2006. Storehouse likewise has suffered from industry specific challenges that have negatively impacted profitability, including an industry wide downward trend in consumer furniture purchasing. Despite the Company's efforts to reduce costs and implement sales growth initiatives, the manufacturing and retail segments have not to-date generated sufficient profits from operations to cover their respective shares of interest expense, corporate overhead and capital expenditures. The Company filed for chapter 11 relief in order to effectuate a long-term restructure of the Company, including the proposed sale of all or substantially all of the assets of Storehouse.

**RELIEF REQUESTED**

10.     By this Application, the Debtors request authorization to employ and retain FTI pursuant to section 327(a) of the Bankruptcy Code to perform limited scope financial advisory and consulting services for the Debtors in these chapter 11 cases, effective as of the Petition Date. FTI was engaged by the Debtors in August 2006 pursuant to an engagement agreement dated August 31, 2006 (the "Engagement Agreement"), attached as Exhibit 1 to the Regan Declaration, to provide certain financial advisory and other consulting services, as described in greater detail below.

## BASIS FOR RELIEF

11. The Debtors are familiar with the professional standing and reputation of FTI. The Debtors understand that FTI has substantial experience in providing retail industry financial advisory and consulting services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

12. On August 31, 2006, FTI was engaged to provide limited scope retail related advisory and consulting services to the Debtors. Since this time, FTI has developed a great deal of institutional knowledge regarding the Debtors' retail operations, finances and systems. FTI has interacted with Storehouse management and the financial team, which has enabled FTI to provide bid packages and related information to potential retail liquidators in order to submit bids as requested for two potential store liquidation scenarios. Such experience and knowledge will be valuable to the Debtors in their efforts to reorganize. Accordingly, the Debtors wish to retain FTI to provide assistance during these cases.

13. The services of FTI are deemed necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. Further, FTI is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

## SERVICES TO BE PROVIDED

14. The Debtors propose to employ and retain FTI, on the terms and conditions set forth in the engagement agreement attached as Exhibit 1 to the Regan Declaration (the "Engagement Agreement"), to provide such retail related financial advisory and consulting services as FTI and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including the following:

a. preparing and providing bid packages for liquidators for pre-selected Storehouse stores;

b. preparing the analysis and evaluation of bids received;

c. negotiating the final contract with the stalking horse bidder;

d. participating in the Section 363 asset sale auction with any qualified bidders;

e. assisting in other services that the Debtors request and FTI agrees to perform.

## **DISINTERESTEDNESS OF PROFESSIONALS**

15. To check and clear potential conflicts of interest in these cases, FTI researched its client database and performed reasonable due diligence to determine whether it has any relationships with the entities listed on Exhibit 2 to the Kevin Regan Declaration (collectively the "Interested Parties"). The Debtors provided FTI with the identities of the Interested Parties. FTI's review consisted of a query of the Exhibit 2 parties within an internal computer database containing names of individuals and entities that are present or recent former clients of FTI. A summary of such relationships that FTI identified during this process is set forth on Exhibit 3 to the Kevin Regan Declaration. Based on the results of its review, FTI does not have a relationship with any of the parties on Exhibit 2 in matters related to these proceedings. FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for the various entities shown on Exhibit 3.

16. FTI has informed the Debtors that, except as may be set forth in the Kevin Regan Declaration, it (i) has no connection with the Debtors, their creditors, the U.S. Trustee, any employee of the office of the U.S. Trustee, or any other parties-in-interest in these cases, or their respective attorneys or accountants; (ii) does not hold or represent any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined in section 101(14) of

the Bankruptcy Code and required by section 327(a) of the Bankruptcy Code.  The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Regan Declaration.

17. FTI will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new facts or circumstances are discovered, FTI will promptly file a Bankruptcy Rule 2014(a) Supplemental Declaration.

## **PROFESSIONAL COMPENSATION**

18. FTI is not owed any amounts with respect to its pre-petition fees and expenses.

19. The Debtors understand that FTI will apply to the Court for allowances of compensation on an hourly basis, plus reimbursement of actual and necessary expenses incurred by FTI, for financial advisory and consulting services in accordance with the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court, the local rules of this District and the Orders of this Court.  FTI's customary hourly rates, subject to periodic adjustments, charged by professional assigned to this engagement are as follows:

| | |
|---|---|
| Senior Managing Director | $595-655 per hour |
| Director/Managing Director | $435-590 per hour |
| Consultants/Sr. Consultants | $215-405 per hour |
| Administrative/Paraprofessional | $95-175 per hour |

20. According to FTI's books and records, during the ninety day period prior to the Debtors' petition date, FTI received $175,000 from the Debtors for professional services performed and expenses incurred in connection with its pre-petition services and its proposed post-petition engagement by the Debtors. A portion of these payments (estimated at $130,000) has been applied to outstanding balances; the remainder will constitute a general retainer.  The retainer will be held by FTI and applied to FTI's final bill for fees and expenses (subject to

approval by the Court), and the unused portion of the retainer, if any, would be refunded to the Debtors.

21. FTI has agreed not to share with any person or firm, the compensation to be paid for professional services rendered in connection with these cases.

## **DISPUTE RESOLUTION PROVISIONS**

22. As set forth in the Regan Declaration, the Debtors and FTI have agreed, subject to the Court's approval of this Application, that: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by FTI to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of FTI, shall be brought in the Bankruptcy Court or the District Court for the Eastern District of Virginia (if the reference is withdrawn); (b) FTI and the Debtors and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits; (c) FTI and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if the Bankruptcy Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, FTI and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit 4 to the Regan Declaration; and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.

23. By this Application, the Debtors seek approval of this agreement by the Court. Further, FTI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of the Bankruptcy Court or the District Court for the Eastern District of Virginia (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

24. The Debtors understand that substantially the same procedures were approved by this Court in connection with FTI's retention in *In re US Airways, Inc.*, Case No. 04-13819-SSM.

## NOTICE

25. Pursuant to this Court's Case Management Order entered September 20, 2006, the Debtors served copies of this Application (including the accompanying declaration and proposed order), on (i) counsel to General Electric Capital Corporation, (ii) counsel to all official committees appointed in these cases, (iii) the Office of the United States Trustee, (iv) the Securities and Exchange Commission, (v) the Internal Revenue Service, and (vi) via electronic mail to all parties-in-interest who have filed and served a notice of appearance and request for service of papers.

## WAIVER OF MEMORANDUM OF LAW

26. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Application, the Debtors request that the requirement that all motions be accompanied by a separate written memorandum of law be waived.

## NO PRIOR REQUEST

27. No prior Application for the relief requested herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form attached hereto as Exhibit A, (i) authorizing the Debtors' retention of FTI as limited scope restructuring advisors and consultants to the Debtors upon the terms outlined in this Application, effective as of the Petition Date; and (ii) granting such other and further relief as is just and proper.

    Respectfully submitted

    THE ROWE COMPANIES
    ROWE FURNITURE, INC.
    STOREHOUSE, INC.

    By Counsel

WILEY REIN & FIELDING LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia 22102
Telephone: (703) 905-2800
Facsimile: (703) 905-2820


By:     /s/ Robert J. Butler
    H. Jason Gold, Va. Bar No. 19117
    Valerie P. Morrison, Va. Bar No. 24565
    Robert J. Butler, Va. Bar No. 67018
    Dylan G. Trache, Va. Bar No. 45939

Counsel to the Debtors and Debtors-in-Possession


WRFMAIN 12536769.1