# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE ROWE COMPANIES | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 06-11142-SSM |
| | ) | |
| | | |
| In re: | ) | |
| | ) | |
| ROWE FURNITURE, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 06-11143-SSM |
| | ) | |
| | | |
| In re: | ) | |
| | ) | |
| STOREHOUSE, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 06-11144-SSM |
| | ) | |

## DECLARATION OF KEVIN REGAN PURSUANT TO BANKRUPTCY RULES 2014 AND 2016 IN SUPPORT OF APPLICATION TO EMPLOY AND RETAIN FTI CONSULTING, INC. AS RESTRUCTURING ADVISORS AND CONSULTANTS TO THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a)

I, Kevin Regan, declare:

1.      I am a Senior Managing Director with FTI Consulting, Inc. ("FTI"), a financial advisory services firm with numerous offices throughout the country. I submit this declaration (the "Declaration") on behalf of FTI in support of the application (the "Application")[1] of the Debtors and debtors-in-possession in the above-captioned chapter 11 cases (together with their

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

H. Jason Gold, Va. Bar No. 19117
Valerie P. Morrison, Va. Bar No. 24565
Robert J. Butler, Va. Bar No. 67018
Dylan G. Trache, Va. Bar No. 45939
WILEY REIN & FIELDING LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia 22102
703.905.2800
*Counsel to the Debtors and Debtors-in-Possession*

non-debtor affiliates and subsidiaries the "Company"), for an order authorizing the employment and retention of FTI as limited scope restructuring advisors and consultants under the terms and conditions set forth in the Application. Except as otherwise noted, I have personal knowledge of the matters set forth herein.[2]

## QUALIFICATION OF PROFESSIONALS

2.      The Debtors are familiar with the professional standing and reputation of FTI. The Debtor understands that FTI has a wealth of experience in providing retail industry related financial advisory and consulting services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

3.      On August 31, 2006, FTI was engaged to provide limited scope retail related advisory and consulting services to the Debtors. Since this time, FTI has developed a great deal of institutional knowledge regarding the Debtors' retail operations, finances and systems. FTI has interacted with Storehouse management and the financial team, which has enabled FTI to provide bid packages and related information to potential retail liquidators in order to submit bids as requested for two potential store liquidation scenarios. Such experience and knowledge will be valuable to the Debtors in their effort to reorganize.

## SERVICES TO BE PROVIDED

4.      The Debtors propose to employ and retain FTI, on the terms and conditions set forth in the Engagement Agreement, attached hereto as Exhibit 1, to provide such retail related

---

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

advisory services as FTI and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including the following:

a.     preparing and providing bid packages for liquidators for pre-selected Storehouse stores;

b.     preparing the analysis and evaluation of bids received;

c.     negotiating the final contract with the stalking horse bidder;

d.     participating in the Section 363 asset sale auction with any qualified bidders;

e.     assisting in other services that the Debtors request and FTI agrees to perform.

## DISINTERESTEDNESS OF FTI

5.     In connection with the preparation of this Declaration, FTI conducted a review of its contacts with the Debtors, their affiliates and certain entities holding large claims against or interests in the Debtors that were made reasonably known to FTI. A listing of the parties reviewed is reflected on Exhibit 2 to this Declaration. FTI's review, completed under my supervision, consisted of a query of the Exhibit 2 parties within an internal computer database containing names of individuals and entities that are present or recent former clients of FTI. A summary of such relationships that FTI identified during this process is set forth on Exhibit 3 to this Declaration.

6.     Based on the results of its review, FTI does not have a relationship with any of the parties on Exhibit 2 in matters related to these proceedings. FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for the various entities shown on Exhibit 3. FTI's assistance to these parties has been related to providing various financial restructuring, litigation support and/or engineering and scientific investigation consulting services. To the best of my knowledge, no services have been provided

to these parties in interest which involve their rights in the Debtors' case, nor does FTI's involvement in these cases compromise its ability to continue such consulting services.

7.     Further, as part of its diverse practice, FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which FTI is to be employed, and none are in connection with these cases.

8.     FTI does not believe it is a "Creditor" with respect to fees and expenses of any of the Debtors within the meaning of Section 101(10) of title 11 of the United States Code (the "Bankruptcy Code"). Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, is a holder of any outstanding debt instruments or shares of the Debtors' stock.

9.     Further, to the best of my knowledge, no one within FTI generally has any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in this District.

10.     As such, to the best of my knowledge, FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that FTI:

      (a)    is not a creditor, equity security holder or insider of the Debtors;

      (d)    was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors.

In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI neither holds nor represents an interest adverse to the Debtors within the meaning of Section 327(a) of the Bankruptcy Code. Accordingly, FTI believes it is a disinterested person under section 101(14) of the Bankruptcy Code.

11.     FTI has not provided and will not provide any professional services to any of the creditors, other parties in interest or their respective attorneys and accountants with regard to any matter directly related to these chapter 11 cases, except as disclosed or otherwise described herein.

12.     It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, FTI will promptly file a Bankruptcy Rule 2014(a) Supplemental Declaration.

## PROFESSIONAL COMPENSATION

13.     Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court, the local rules of this District and the Orders of this Court, FTI will seek payment for compensation on an hourly basis, plus reimbursement of actual and necessary

expenses incurred by FTI. FTI's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professional assigned to this engagement are as follows:

| | |
|---|---|
| Senior Managing Director | $595-655 per hour |
| Director/Managing Director | $435-590 per hour |
| Consultants/Sr. Consultants | $215-405 per hour |
| Administrative/Paraprofessional | $95-175 per hour |

14. FTI's hourly rates are subject to review and are adjusted annually. I understand that the allowances in this matter will be fixed by the Court upon application and after notice to creditors and parties in interest, and that my compensation and reimbursement of expenses will be based upon Order of the Court.

15. According to FTI's books and records, during the ninety day period prior to the Debtors' petition date, FTI received $175,000 from the Debtors for professional services performed and expenses incurred in connection with its pre-petition services and its proposed post-petition engagement by the Debtors. A portion of these payments (estimated at $130,000) has been applied to outstanding balances; the remainder will constitute a general retainer. The retainer will be held by FTI and applied to FTI's final bill for fees and expenses (subject to approval by the Court), and the unused portion of the retainer, if any, would be refunded to the Debtors.

16. To the best of my knowledge, (a) no commitments have been made or received by FTI with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code and (b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these chapter 11 cases.

## DISPUTE RESOLUTION PROCEDURES

17.     The Debtors and FTI have agreed, subject to the Court's approval, that: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by FTI to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of FTI, shall be brought in the Bankruptcy Court or the District Court for the Eastern District of Virginia (if the reference is withdrawn); (b) FTI and the Debtors and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits; (c) FTI and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if the Bankruptcy Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, FTI and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit 4 hereto; and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.

18.     Further, FTI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of the Bankruptcy Court or the District Court for the Eastern District of Virginia (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 28, 2006 at Atlanta, Georgia.

Kevin Regan
Senior Managing Director

EXHIBIT

I

<u>PRIVATE & CONFIDENTIAL</u>

August 31, 2006

Mr. Garry W. Angle
VP and Treasurer
The Rowe Companies
2121 Gardner Street
Elliston, VA  24087

Re: <u>Storehouse, Inc.</u>

Dear Garry:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Storehouse, Inc. (the "Company"), to provide certain financial advisory and consulting services (the "Services") set out below.  This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.    **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:

- the preparation of bid packages for liquidators for pre-selected storehouse stores;
- the analysis and evaluation of bids received;
- the negotiation of final contract with the winning bidder;
- the analysis and assistance of remaining retail stores for potential liquidation; and
- any other services you request and we agree to perform.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors.  References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the

Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

3.    Fees

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

|  | Per Hour |
|---|---|
| Senior Managing Directors | $595 - 655 |
| Directors / Managing Directors | 435 - 590 |
| Associates / Consultants | 215 - 405 |
| Administrative / Paraprofessionals | 95 - 175 |

Hourly rates are generally revised periodically. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable expenses which are likely to be incurred on your behalf during this Engagement, including, but not limited to, counsel fees, airfare, meals, hotel accommodations, telephone, industry research, duplicating and printing, etc. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable out of pocket expenses (including counsel fees) with respect thereto.

Based on our initial understanding of the matter and our scope of work, our retainer in this matter has been sized at $50,000. The retainer, which is to be paid by the Company upon the execution of this Engagement Contract, is typically held and applied to our final bill for the Services, with any excess amounts refunded to the Company. We reserve the right, however, to apply the retainer to our fees as the Engagement proceeds. The retainer is not intended to be an estimate for the total cost of the work to be performed.

Invoices for fees and expenses incurred in connection with this Engagement will be billed bi-weekly, and are due upon receipt. If we do not receive payment of the retainer or any invoice within 15 days of the invoice date, we shall be entitled, without prejudice to any other rights that we may have, to immediately suspend provision of the Services until all sums due are paid in full.

4.    **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the

entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5.  **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and the administrative agent. As you may be aware, FTI is regularly retained by the administrative agent and/or other members of your lending group (or law firms retained by the administrative agent or lending group members). However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not knowingly accept an engagement that directly conflicts with this Engagement without your prior written consent.

6.  **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Kevin Lavin at (212) 499 - 3660.

Yours faithfully,

FTI CONSULTING, INC.

By: _____
    Kevin Lavin
    Senior Managing Director

Attachment – As stated

Storehouse, Inc.
August 31, 2006

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Storehouse, Inc.

By: _____
      Garry W. Angle
      VP and Treasurer

Date: _____

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Storehouse, Inc. dated August 31, 2006. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.    Reports and Advice**

1.1    **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.    Information and Assistance**

2.1    **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4    **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.     Additional Services**

3.1     **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us.  Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

**4.     Confidentiality**

4.1     **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

4.1.1     is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2     is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3     is or has been independently developed by the recipient.

4.2     **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3     **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4     **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5     **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5.     Termination**

5.1     **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2    **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.    **Indemnification and Liability Limitation; Waiver of Jury Trial**

6.1    **Indemnification** - You agree to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

6.2    **Limitation of liability** - You agree that no Indemnified Person shall have any liability as a result of your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3    **WAIVER OF JURY TRIAL** –TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

7.    **Governing Law and Jurisdiction**-The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

FTI CONSULTING, INC

**<u>Confirmation of Standard Terms and Conditions</u>**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

Storehouse, Inc.

By: _____
     Garry W. Angle
     VP and Treasurer

Date: _____9 - 1 - 06_____

Exhibit 2

## Listing of Parties-in-Interest Reviewed for Current Relationships

The Rowe Companies Listing of Entities Searched

Debtors and Affiliates

Rowe Diversified, Inc.
Rowe Furniture Wood Products, Inc.
Rowe Furniture, Inc.
Rowe Properties Jessup, Inc.
Rowe Properties Salem, Inc.
Rowe Properties Sylmar, Inc.
Rowe Properties, Inc.
Storehouse of Tampa, Inc.
Storehouse, Inc.
The Rowe Companies

Secured Lender

General Electric Capital Corporation

Fifty Largest Unsecured Creditors

(i) The Rowe Companies

Avalon Crescent
Barry A. Birnbach
BDO Seidman LLP
Bert N. Bisgyer
Charles T. Rosen
Cox Communications
Cole & King LLC
Computershare
Courtyard Marriot
CT Corporation System
Deborah C. Jacks
Dominion Virginia Power
Fireman's Fund Insurance
GE Capital Fleet Services
Hilb Rogal & Hobbs
International Home Furnishings Club
KPMG LLP
Kroll Zolfo Cooper LLC
Maryland Motor Vehicle Authority
Minol LP
Royal & SunAlliance Insurance
RR Donnelley Receivables Inc.
Tysons 11 Development Co. LP
Verizon Wireless
Wachovia Bank, NA

Washington Gas
Wilink Inc.

(ii) Rowe Furniture, Inc.

Amerenue
American Electric Power
Applied Financial LLC
Bartson Fabrics Inc.
Barrow Industries, Inc.
BJK Industries
Bluelinx Corporation
Bruce and Jenkins Lumber Co.
Cameo Fibers
Carpenter Company
Carroll Companies Inc.
Compton Wood Products
Con Way Transportation Services
Diversified Packaging Corp.
Diversitex
Dunlop Industries, Inc.
Everglow Inc.
Fed Ex
Furniture Transportation Systems
Golding Fabrics Inc.
Gregory Logistic Inc.
Hickory Springs Manufacturing Company
Hartford Financial Services
High Point Hardwoods, Inc.
Holland Special Delivery
Hub Group Associates, Inc.
Internal Revenue Service
Lance Transport, Inc.
Leggett and Platt
Mastercraft Fabrics LLC
McLane Transport Inc.
Mercer Trust Company
Mid South Adhesives Inc.
Moncure Plywood LLC
Morgan Fabrics Corporation
MS Warehouse
NCFI Polyurethanes
Next Generation Films Inc.
Pacific Coast Feather Cushion Co.
Penske Logistics
Preferred Furniture Components

Pregis Corporation
Quaker Fabric Corp.
Quality Sample Company Inc.
Richloom Fabrics Group Inc.
Salem City
Smurfit Stone Container
Source4
Stanley Fastening Systems
Stein Fibers LTD
Swift Textiles, Inc.
Tietex International LTD
United Refrigeration Inc.
Universal Spring Company
UPP Business Systems
Virginia Department of Taxation
Williard Stewart Inc.

(iii) Storehouse, Inc.

Abacus
Airtex Designs
Argonaut, Inc.
Ariel
Art & Frame Source
Barcalounger
Baronet USA
Basset Mirror Company
Baybrook Square Center Reit LLC
Buying & Design USA
Carolina Mattress Guild
Chase Paymentech
Cohen Companies
Corporate Art Services
Curvet USA
D.C. Ecker Construction, Inc.
Decoro
Delta Audit
Design Direct Inc.
Directions
Downtown at the Gardens Assoc.
d-Scan
Elite Manufacturing
Especially for You
Four Hands Inc.
Global Views
Interface Americas, Inc.
Lamp Works
Ligna Furniture
Majestic Mirror
Metropolitan Design Group
Midtjydsk Mobelfabrik
Mitchell Gold
Padma's Plantation
Parallel Lines
Purnell Furniture Services

Robert Abbey
Ryder Transportation Services
S2 Resources, Inc.
Sam Moore
Shermag Inc.
Sign*A*Rama
Sitcom
Sparks Custom Retail LLC
Spencer Press
Staples Business Advantage
Storis, Inc.
Surya Carpets Incorporated
The Newville Candle Company
The Romweber Co.
The Silk Trading Company Inc.
TNT Freight Management
Visions Global
Wildcat Territory

Judges

Adams, David H.
Huennekens, Kevin R.
Mayer, Robert G.
Mitchell, Stephen S.
St. John, Stephen C.
Tice, Jr., Douglas O.

United States Trustee

Barnhill, Leander D.
Bove, Frank J.
Conlon, Debera F.
Davis, Martha
Early, Dennis J.
Frankel, Jack I.
Franklin, Shannon D.
McDow, Jr., W. Clarkson
Van Arsdale, Robert B.
Weschler, Cecelia A.

Major Lessors and Contract Parties

 4827 The Retail Property Trust
8515 Georgia Ave
Ackerman & Company
Alamo Quarry
American Express
Amplicon/ Call First
Annapolis Harbour Center Associates LLP
Applied Financial
Associated Real Estate Company
AT&T
Avalon Cresent

Barclay Properties Management
Baybrook Sq Assoc
Bayer Retail Company LLC
Bpg Management Services
Bradley Wisconsin Assocs L.P.
Calligaris Spa
Canon Financial
Carolyn & Bruce Wilson
Carytown Square, L.C.
Cfh Realty
Chelsea Gca Realty Partnership
Citrus Park Venture LP
Columbia Crossing I, LLC
Columbus Square Associates
Concord Gallery
Congressional South Associates LP
Conroy Millenia Partners
Corporate Property Investors
Cotswold Center Abbey Court, LLC, et al.
Cousins Properties Inc.
CP Commercial Properties XI, I
Cp Venture Five
Deno P Dikeou/Dikeou Realty
District of Columbia Government
Eastgate Center VI L.P.
Elray Properties
Eurosedia
Eurostyle
Fairfax Associates LLC
Federal Realty - Idylwood
Fourth Quarter Properties
Fpb Investments
Galleria Plaza Ltd
Gateway Center Assoc Ltd
Gateway Center, LLC
Hill & O'Conner Ltd
HSBC
Hughes Creative
Impact Service Group
Inland Southwest
Inland Southwest Management LL
International Home Furnishings Center
J.A. Licensing
KGE Associates, LP
Kimco Woodlands
L&B Deep Inwood Village, LP
Legacy Linens
Lido Lighting
Little Harbour Plaza Inc
Lizell Associates
LSM Center Partners, LP
Madison Marq, et al.
Main Street Properties
Majestic-Norcross II/Northwestern Mutual Life Ins.
Manufactures Financing Service

Marketfair Retail Center, LLC
Max Stettler
Menin
Metropolitan Life Insurance Company
Metrovation
Metrovation 35 West
Metrovation Shrewsbury
Mid City Development Co.
Monument Parking
Mw Hyde Park
NHM Owner - 1, LLC
N-Leather
North Point Mall
Pacific Asset Funding, LLC
Parole Town Center Assoc LP
Patapsco Realty Inc
Plymouth Meeting Mall
Ponce Investment LLC
Poplar Bluff Ind. Inc.
PR Plymouth Meeting
Purnell Furniture Services
R.R. Donnelley Receivables Inc.
Raymond Leasing Corp.
SAP
Sealy TA Texas LP
Spencer Press
St. John Properties, Inc.
Stony Point Associates LLC
Street Retail Inc
Sungard Availability Service
Taubman
Taubman Brothers LLC
The Farm
The Major Family, L.L.C.
The Mall @ Iv
The Mall @ IV Group Properties
The Payne Center, LLC
The Washington Post
Tj Palm Beach Assoc
Tkc Xxix LLC
Town Center Lakeside Ltd
Towson Circle LLC
Trade AM International
TRG Charlotte LLC
Hachette Filipacchi Media, Inc.
Tyson's 11 Development Company
U.S. Realty Partners Limited Partnership
Unisys
United Investment Properties
United Parcel Service
University Mall Prop LLC
Urbanus
Venture Commercial
Wanamaker Texas LP
Washingtonian Associates

Willowbrook I LP
Wmjk Ltd
Writ Limited Partnership

Major Stockholders

Birnbach, Gerald M.
Rowe, Keith J.
Silver, Sidney J.
Wellington Management Company, LLP

Professionals

Silver Freedman and Taff LLP
Carl Marks Advisory Group, LLC
Administar Services Group, Inc.
Wiley Rein & Fielding LLP
Penta Advisory Services LLC
Bingham McCutchen LLP
Asset Disposition Advisors, LLC

Officers and Directors
Angle, Garry W.
Birnbach, Bruce M.
Birnbach, Gerald M.
Cheney, Richard E.
Hipple, Caroline
Jacks, Deborah C.
Lazaro, Christina
Ptashek , Harvey I.
Rosen, Charles T.
Rowe, Keith J.
Silver, Sidney J.
Westerman, Richard R.
Woodlief, Gerald O.

Parties to Major Litigation

Affric Furniture Ltd.
d-Scan
Kraftson Caudle LLC

**Exhibit 3**

**Parties-in-Interest Noted for Court Disclosure**

**Relationships in Matters Related to These Proceedings**

None

**Relationships in Unrelated Matters**

General Electric Capital Corporation
Bingham McCutchen LLP
Wiley, Rein & Fielding LLP
HSBC
Fireman's Fund Insurance
GE Capital Fleet Services
Dominion Virginia Power
Unisys
The Mall at Iv
Fed Ex
Verizon Wireless
Wachovia NA
KPMG LLP
Smurfit Stone Container
American Electric Power
Internal Revenue Service
American Express
AT&T
Metropolitan Life Insurance Company
Taubman
United Parcel Service

**Exhibit 4**

## Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in this Agreement. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

### Mediation

A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator will be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

### Arbitration

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration and judgment on the award rendered by the arbitration may be entered in any Court having jurisdiction thereof. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA ("AAA Rules').