**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: | Chapter 11 |
| THE ROWE COMPANIES | Case No. 06-11142 (SSM) |
| Debtor. | |
| In re: | Chapter 11 |
| ROWE FURNITURE, INC. | Case No. 06-11143 (SSM) |
| Debtor. | |
| In re: | Chapter 11 |
| STOREHOUSE, INC. | Case No. 06-11144 (SSM) |
| Debtor. | |

**FINAL ORDER PURSUANT TO BANKRUPTCY CODE**
**SECTIONS 105, 361, 362, 363 AND 364 (I) AUTHORIZING SECURED**
**POST-PETITION FINANCING ON A SUPERPRIORITY BASIS;**
**(II) AUTHORIZING USE OF CASH COLLATERAL; (III) APPROVING**
**AGREEMENTS RELATED TO THE FOREGOING; (IV) MODIFYING**
**AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

THIS MATTER came before the Court on the motion (the "Motion") dated September 18, 2006 of The Rowe Companies ("Rowe"), Rowe Furniture, Inc. ("Rowe Furniture"), Storehouse, Inc. ("Storehouse," and together with Rowe and Rowe Furniture, the "Borrowers"), all of which are debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 362(c)(3) and 364(d) of title 11 of the United States Code, 11 U.S.C. § § 101 *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking entry of an final order (the "Final Order"), *inter alia*:

(i)        authorizing the Debtors to obtain secured postpetition financing on a superpriority basis (the "DIP Facility"), pursuant to the terms and conditions of that certain Debtor In Possession Credit Agreement (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Credit Agreement") among the Borrowers, the non-debtor affiliates Rowe Properties, Inc. ("Rowe Properties") and Rowe Diversified, Inc. ("Rowe Diversified," and together with Rowe Properties, the "Guarantors") as guarantors, the lenders party thereto from time to time (collectively, including the DIP Agent (as defined herein), the "DIP Lenders"), and General Electric Capital Corporation, as administrative agent, collateral agent and issuing bank (the "DIP Agent"), for and on behalf of itself and the other DIP Lenders, substantially in the form of Exhibit C annexed to the Motion;

(ii)        authorizing and directing the Debtors to perform under the DIP Credit Agreement and the other related loan documents (collectively with the Credit Agreement, the "DIP Facility Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP Facility Documents;

(iii)        granting the DIP Facility and all obligations owing thereunder and under the DIP Facility Documents to the DIP Agent, the DIP Lenders and/or any bank product providers identified therein (collectively, the "DIP Obligations") allowed superpriority administrative expense claims in each of the Debtors' chapter 11 cases, which superpriority claims shall be subject only to the Carve-Out Amount (as defined herein) and will otherwise be accorded superpriority status in each of the Debtors' bankruptcy cases, having priority over any and all other administrative expenses in the Debtors' chapter 11 cases;

(iv)        granting to the DIP Agent, for the benefit of itself, the DIP Lenders, and the aforementioned bank product providers automatically perfected security interests and liens in

and on all of the Collateral (as defined herein), including, without limitation all property constituting "<u>Cash Collateral</u>," as defined in section 363(a) of the Bankruptcy Code, senior in priority to the Prepetition Liens (as defined herein) and also senior in priority to all other security interests and liens;

(v)        authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Facility Documents as such become due, including, without limitation, the letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees, administrative agent's fees, the fees and disbursements of the DIP Agent's attorneys, advisers, accountants, and other consultants, and the legal expenses of the DIP Lenders, all to the extent provided in the DIP Credit Agreement and other DIP Facility Documents in accordance with the terms of those documents;

(vi)        authorizing the use of Cash Collateral of certain Prepetition Lenders (as defined herein) under the Prepetition Credit Agreement (as defined herein) and to provide adequate protection to the extent of any outstanding prepetition indebtedness owed to the Prepetition Lenders for any diminution in value of the Prepetition Collateral (as defined herein), including the Cash Collateral; and

(vii)        vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility Documents and this Final Order;

The Court having considered the Motion, the exhibits attached thereto, the DIP Facility Documents, the evidence submitted at the interim hearing on the Motion conducted on September 20, 2006 (the "<u>Interim Hearing</u>") and the evidence submitted at the final hearing on

the Motion conducted on October 13, 2006 (the "<u>Final Hearing</u>"); and an interim order authorizing certain funding on an interim basis having been entered by the Court on September 21, 2006; and adequate notice of the Final Hearing having been provided in accordance with Bankruptcy Rule 4001(c); and all objections, if any, to the Final Order approving the DIP Facility having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.  *Petition Date:*  On September 18, 2006 (the "<u>Petition Date</u>"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, commencing these bankruptcy cases (each Debtor's case, a "<u>Chapter 11 Case</u>," and collectively, the "<u>Chapter 11 Cases</u>").

B.  *Debtors In Possession:*  The Debtors are continuing in the management and operation of their businesses and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On September 25, 2006, the United States Trustee appointed separate official committees of unsecured creditors for Rowe Furniture (the "<u>Rowe Furniture Committee</u>") and Storehouse (the "<u>Storehouse Committee</u>," and together with the Rowe Furniture Committee, the "<u>Statutory Committees</u>").

C.  *Jurisdiction and Venue:*  This Court has jurisdiction over these proceedings, and over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in and pursuant to 28 U.S.C. § 157(b)(2).

Venue for the Chapter 11 Cases and for proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Interim Order:* Based upon the Motion, the exhibits attached thereto, the DIP Facility Documents, and the evidence submitted at the Interim Hearing on the Motion, on September 21, 2006, the Court approved that certain *Interim Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363 and 364 (I) Authorizing Secured Post-Petition Financing on a Superpriority Basis; (II) Authorizing Use of Cash Collateral; (III) Approving Agreements Related to the Foregoing; (IV) Modifying Automatic Stay; (V) Granting Related Relief; and (VI) Scheduling a Final Hearing* (the "Interim Order").   Pursuant to the Interim Order and Bankruptcy Rule 4001, the Debtors were authorized, among other things, to incur secured superpriority borrowings from the DIP Lenders pursuant to the terms of the DIP Credit Agreement, in form and substance substantially as attached to the Motion as Exhibit B, on an interim basis pending a final hearing on the Motion.  The Interim Order, including, without limitation, the findings made therein, is incorporated herein by reference.  Pursuant to the Interim Order, the Final Hearing was scheduled for October 13, 2006.

E.    *Debtors' Acknowledgements, Agreements and Stipulations:* Without prejudice to the rights of parties in interest as set forth in paragraph 28 below, the Debtors admit, stipulate, acknowledge and agree, and the Court, based upon the Debtors' representations, hereby finds that (clauses (i)-(v) of this paragraph E being collectively referred to herein as the "Debtors' Stipulations"):

(i)    *Prepetition Facility:* Pursuant to that certain Credit Agreement, dated as of January 6, 2006 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Credit Agreement" and together with all other loan and security

documents executed in connection therewith, the "Prepetition Credit Documents"), among the Borrowers, the Guarantors, General Electric Capital Corporation, as administrative agent (the "Prepetition Agent"), GECC Capital Markets Group, Inc. as Sole Lead Arranger and Book Runner, and the lenders that are signatories thereto (collectively, together with the Prepetition Agent, the "Prepetition Lenders"), the Prepetition Lenders provided revolving credit and letter of credit facilities to the Borrowers and provided other financial accommodations to or for the benefit of the Borrowers (collectively, the "Prepetition Facility").

(ii)     *Prepetition Obligations:* The Prepetition Facility provided the Borrower with (a) fifty million dollars ($50,000,000) in aggregate principal amount of revolving commitments through January 6, 2009, including (1) a swing line commitment of five million dollars ($5,000,000) (the "Revolving Loans") and (2) a sub-limit for letters of credit (the "Prepetition Letters of Credit") having a maximum drawing amount of not more than five million dollars ($5,000,000) and (b) a seven million dollar ($7,000,000) term loan (the "Term Loan").  As of the Petition Date, (*x*) the outstanding principal amount of all Revolving Loans under the Prepetition Credit Agreement was $27,102,073.58 (with no outstanding amounts owing under letters of credit) and (*y*) the outstanding principal amount of the Term Loan under the Prepetition Credit Agreement was $7,000,000 (collectively, together with accrued and unpaid interest, and any fees (including, without limitation, attorneys' fees and related expenses), indemnification obligations and other charges of whatever nature, whether or not contingent, owing in respect thereof, the "Prepetition Obligations").

(iii)     *Prepetition Liens:* To secure the Prepetition Obligations, and pursuant to the Prepetition Credit Agreement and the Prepetition Credit Documents, the Borrowers and the Guarantors granted the Prepetition Agent perfected, first-priority security interests and liens (the

"Prepetition Liens") in and on (a) all of their personal property, whether tangible or intangible, including, without limitation, all accounts, books and records, cash and cash equivalents, contract rights, inventory, deposit accounts, equipment, fixtures, intellectual property, goods, general intangibles, chattel paper, instruments, promissory notes, drafts and documents, investments, investment property, commercial tort claims, instruments, letters of credit and rights under letters of credit, and insurance, whether then owned or thereafter acquired, together with any and all proceeds and products of any thereof, (b) certain of the Borrowers' and Guarantors' real property and (c) property constituting Cash Collateral (together with all the foregoing assets and property described in this clause (iii), the "Prepetition Collateral").

(iv) *Validity of Prepetition Liens, Claims and Obligations:* After consultation with their attorneys and financial advisors, but subject to the provisions of paragraph 28 hereof, the Debtors and the Prepetition Agent acknowledge and agree that (a) the Prepetition Liens are valid, binding, enforceable and perfected liens, with priority over any and all other liens, and are not subject to any challenge or defense, including, without limitation, avoidance, recharacterization or subordination, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (b) the Prepetition Obligations constitute legal, valid, binding, and nonavoidable obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Credit Agreement and the Prepetition Credit Documents; (c) no offsets, challenges, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against

the Prepetition Agent, the Prepetition Lenders, and/or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (e) as of the Petition Date, the Prepetition Obligations constitute allowed fully secured claims within the meaning of section 506 of the Bankruptcy Code in an amount that is not less than (*x*) $27,102,073.58 in respect of outstanding principal under the Revolving Loans under the Prepetition Credit Agreement (with no outstanding amounts owing under letters of credit) and (*y*) $7,000,000 in respect of outstanding obligations under the Term Loan, together with accrued and unpaid interest, fees, including, without limitation, attorneys' fees and related expenses, and other charges of whatever nature owing in respect thereof; (f) the Debtors have waived, discharged and released any right they may have to challenge any of the Prepetition Obligations and the security for these obligations and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Agent or the Prepetition Lenders and/or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; and (g) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Agent or the Prepetition Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition Agent and the Prepetition Lenders were oversecured, were payments out of the Prepetition Agent's and the Prepetition Lenders' Prepetition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(v)     *Cash Collateral:*  The Debtors believe and represent that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Prepetition Collateral and is therefore Cash

Collateral of the Prepetition Agent and the Prepetition Lenders within the meaning of section 363(a) of the Bankruptcy Code.

        F.      *Findings Regarding the Post-Petition Financing:*

        (i)      *Priming of the Prepetition Lien:* The priming of the Prepetition Liens and all other liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to continue to operate their businesses to the benefit of the estates and creditors. However, the Prepetition Lenders are entitled to receive adequate protection as set forth in this Final Order pursuant to sections 361 and 363 of the Bankruptcy Code, to the extent any Prepetition Obligations remain outstanding, for any diminution in the value of the Prepetition Collateral (including Cash Collateral) resulting from the Debtors' use, sale or lease of the Prepetition Collateral, the imposition of the automatic stay, the priming of the Prepetition Liens and/or the subordination to the Carve-Out Amount (collectively, the "Diminution in Value").

        (ii)      *Need for Post-Petition Financing and Use of Cash Collateral:* The Debtors' need for financing is critical. In the absence of the DIP Facility and the authorized use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, their estates and their creditors would occur. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business or maintain their property in accordance with state and federal law without the DIP Facility and authorized use of Cash Collateral. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations, are essential to the Debtors' continued viability.

(iii)    *No Credit Available on More Favorable Terms:*  Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors have been unable to obtain interim unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain credit (a) having priority over that of administrative expenses of the kind specified in sections 503(b) and 507(a) and (b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders, perfected first-priority security interests in, priming liens and junior liens on, as provided herein, all of the Debtors' existing and after-acquired assets (except Avoidance Recoveries, as defined herein) and the granting to the DIP Lenders of superpriority claims and liens and the other protections set forth in this Final Order.

G.    *DIP Facility Documents:*  The Debtors seek authority to (i) enter into the DIP Facility on a final basis on the terms described herein and in the DIP Facility Documents and (ii) use Cash Collateral to administer their Chapter 11 Cases and fund their operations.

H.    *Interim Borrowing:*  After the Interim Hearing, and pursuant to the Interim Order, the Court authorized, among other things, extensions of credit under the DIP Facility up to the aggregate principal amount of fifty million dollars ($50,000,000), including a sub-limit for letters of credit having a maximum draw amount of five million dollars ($5,000,000) (collectively, the "Interim Financing").  Based upon the record of the Interim Hearing, the Court expressly authorized and empowered the Debtors to execute and deliver the DIP Facility Documents and,

after execution, authorized, empowered and directed the Debtors to perform all of the DIP Obligations in accordance with the terms of the Interim Order and the DIP Facility Documents, including, without limitation, (i) payment of the Prepetition Obligations, (ii) payment of the fees, expenses and other amounts described in the DIP Facility documents as such became due, including, without limitation, the letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees, administrative agent's fees, the fees and disbursements of the DIP Agent's attorneys, advisers, accountants and other consultants, and the legal expenses of the DIP Lenders, all to the extent provided in DIP Credit Agreement and other DIP Facility Documents and (iii) payment of the costs and fees of the Prepetition Agent, all as set forth in the Interim Order. On September 21, 2006, the DIP Facility Documents were executed, and the Debtors were authorized to borrow on the terms and conditions set forth in those documents and in the Interim Order.

I. *Sections 506(c) and 552(b):* In light of their agreement to (i) subordinate their liens and superpriority claims to the Carve-Out Amount (in the case of the DIP Lenders), and the Carve-Out Amount and the DIP Liens (in the case of the Prepetition Lenders), (ii) permit the Debtors use of their Cash Collateral pursuant to the terms of the Interim Order and this Final Order and (iii) allow to be paid under the DIP Facility, among other things, certain prepetition customer obligations, prepetition wages, benefits and insurance premiums for the benefit of employees, and tax obligations, each as requested by the Debtors and approved by the Court, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders are each entitled to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J. *Good Faith of the DIP Agent and the DIP Lenders:*

(i)     The DIP Lenders have indicated a willingness to continue to provide financing to the Debtors subject to (a) the entry of the Interim Order and this Final Order, (b) approval of the terms and conditions of the DIP Facility and the DIP Facility Documents, and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are good faith financiers, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur or amendment of the Interim Order or this Final Order or any other order, as provided in sections 363(m) and 364(e) of the Bankruptcy Code.

(ii)    The terms of this Final Order and the DIP Facility are fair and reasonable and reflect the Debtors' exercise of reasonable and prudent business judgment consistent with their fiduciary duties.  The extensions of credit authorized herein are supported by reasonably equivalent value and fair consideration and have been negotiated in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders.  Any credit extended, loans made or funds advanced to or Cash Collateral used by the Debtors pursuant to the DIP Facility Documents shall be deemed to have been so extended, made, advanced or used in good faith by the DIP Agent and the DIP Lenders as required by, and within the meaning of, sections 363(m) and 364(e) of the Bankruptcy Code and shall have all of the benefits and protections of the Interim Order and this Final Order.

K.      *Notice:*  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors to (i) the Office of the United States Trustee for the Eastern District of Virginia; (ii) each of Debtors' twenty (20) largest unsecured creditors; (iii) counsel to the Statutory Committees, (iv) the Securities and Exchange Commission; (v) the Internal

Revenue Service; (vi) the Prepetition Agent, for itself and for the Prepetition Lenders, and its counsel; (vii) the DIP Agent and its counsel; (viii) counsel to d-Scan; (ix) any party that filed a request for service of notices with the Court; and (x) all parties who received notice of the Interim Order to the extent not included above. Under the circumstances, such notice of the Final Hearing and the relief requested in the Motion is sufficient and complies with the requirements of sections 102(1) and 364(c) of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001(c).

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor:

IT IS HEREBY ORDERED that:

1.     *Motion Approved.*   The Motion is granted, subject to the terms and conditions set forth in this Final Order.

**DIP Financing Authorization**

2.     *Ratification of Interim Order and Authorization of the DIP Financing and the DIP Facility Documents.*  The terms of the Interim Order are hereby ratified and confirmed, and all borrowings and payments made thereunder shall be deemed made in accordance with and pursuant to this Final Order.  The DIP Facility Documents are hereby approved on a final basis, and the Debtors are expressly and immediately authorized, empowered and directed to perform the DIP Obligations hereunder and thereunder.  The DIP Facility documents evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and their creditors in accordance with their terms.  The Debtors are hereby authorized and directed to pay the principal, interest, fees, expenses and other amounts described in the DIP Facility Documents as such become due, including, without limitation, the letter of credit fees (including issuance and other related charges), continuing commitment fees, closing

fees, servicing fees, audit fees, structuring fees, administrative agent's fees, the fees and disbursements of the DIP Agent's attorneys, advisers, accountants, and other consultants, and the legal expenses of the DIP Lenders, all to the extent provided in the DIP Credit Agreement and other DIP Facility Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by the DIP Facility Documents. All of the obligations described in the DIP Facility Documents shall constitute valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    *Duration and Amount*. Until the Termination Date (as defined herein), and subject to the terms and conditions of the DIP Facility Documents, this Final Order and the limitations on availability and reserves set forth in the DIP Credit Agreement, the Debtors are hereby authorized to request extensions of credit (in the form of loans and letters of credit) up to an aggregate outstanding principal amount of fifty million dollars ($50,000,000) at any one time outstanding (inclusive of amounts of the DIP Facility previously extended and outstanding), including (a) a sub-limit for letters of credit having a maximum drawing amount of not more than five million dollars ($5,000,000) and (b) to the extent any Prepetition Obligations remain outstanding after entry of this Final Order, an amount sufficient to indefeasibly pay in full, in accordance with the DIP Facility Documents and the Interim Order, the outstanding Prepetition Obligations under the Prepetition Credit Documents.

4.    *DIP Obligations*. Upon entry of this Final Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the

Debtors to any of the DIP Lenders under any of the DIP Facility Documents or hereunder, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Credit Documents and whether borrowed under the terms of the Interim Order or this Final Order. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date.

5.      *Postpetition Liens.*   Upon entry of the Final Order, the DIP Agent, for the benefit of itself and the DIP Lenders, was granted (and such grant is hereby ratified, confirmed and approved on a final basis), pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, continuing, valid, binding, enforceable, and automatically perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") any and all of the assets of the Debtors or their estates, including, without limitation, (a) all Prepetition Collateral, including all Cash Collateral, (b) all unencumbered assets, proceeds of any and all lawsuits or causes of action (other than the Avoidance Recoveries), (c) all personal property of the Debtors, whether tangible or intangible, including, without limitation, all accounts, accounts receivable, deposit accounts, certain investments, instruments, documents, inventory, fixed assets, machinery and equipment, general intangibles, intellectual property, books and records, cash and cash equivalents, contract rights, fixtures, goods, chattel paper, promissory notes, drafts, investment property, securities, commercial tort claims, instruments, letters of credit and rights under letters of credit, and insurance policies, together with the products and proceeds thereof, (d) all capital stock and other equity interests in each of the Debtors, Borrowers and their subsidiaries and/or affiliates, and (e) all of the Debtors' interests in any real property, whether owned or leased (all of the foregoing assets and property, whether now owned or hereafter acquired, wherever located (in the domestic United States or otherwise), and all of the products

and proceeds thereof, collectively, the "Collateral"). The Collateral shall include any avoidance power claims or actions under (i) section 549 of the Bankruptcy Code relating to postpetition transfers of Collateral and any proceeds thereof, (ii) sections 547 and 548 of the Bankruptcy Code, but only to the extent of any Carve Out (as defined herein) funds used to investigate, commence, or conduct such litigation and/or related settlement discussions that resulted in such proceeds, as well as (iii) the Debtors' rights under section 506(c) of the Bankruptcy Code against parties other than the DIP Agent or the DIP Lenders and the proceeds thereof, but the Collateral shall not include the claims or the proceeds of any other claims or actions under chapter 5 of the Bankruptcy Code (the excluded chapter 5 claims and related proceeds being hereinafter referred to as the "Avoidance Recoveries"). With respect to the leaseholds listed on Exhibit B to this order, the liens of the DIP Agent and DIP Lenders shall be limited to the proceeds of the sale, assignment, or other disposition by the Debtors of such leasehold interest.

6.     *Priority of DIP Liens*. The DIP Liens shall be subordinate only to the Carve-Out Amount, but shall otherwise be senior in priority to all other security interests in, liens on, or claims against, any of the Collateral. The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (any "Successor Cases"), and/or upon the dismissal of any of the Chapter 11 Cases. The DIP Liens shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

7.     *Superpriority Claims.* Upon entry of the Interim Order, the DIP Agent and the DIP Lenders were granted (and such grant is hereby ratified, confirmed and approved on a final

basis), pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases (collectively, the "DIP Superpriority Claim") for all loans, letter of credit reimbursement obligations and any other indebtedness or obligations, contingent or absolute, at any time owing by any of the Debtors to any of the DIP Lenders under any of the DIP Facility Documents or hereunder, including, without limitation, all principal, accrued interest, costs, and other amounts under the DIP Facility Documents, (a) with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code, and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. The DIP Superpriority Claim shall have priority over the Adequate Protection Superpriority Claim (as defined herein), shall be subject only to the Carve-Out Amount and shall not extend to any Avoidance Recoveries.

8.    *Extensions of Credit; Payment of Prepetition Obligations*. The DIP Lenders shall have no obligation to make any extension of credit pursuant to the DIP Facility Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Facility Documents are satisfied. From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and the other DIP Facility Documents and in compliance with

the budget, a copy of which is annexed to the Interim Order as Exhibit 1 (the "Budget"), as the same may be modified from time to time in accordance with section 5.14 of the DIP Credit Agreement. Immediately upon the Closing Date (as defined in the DIP Credit Agreement), the Debtors were authorized and directed (and such authorization is hereby ratified, confirmed and approved on a final basis) to draw the Interim Financing under the DIP Facility to indefeasibly repay in full all Prepetition Obligations due and owing under the Prepetition Credit Documents (including, without limitation, any amounts owing under the Prepetition Credit Documents that are contingent and unliquidated and subsequently become liquidated), *provided*, *however*, that such payment was without prejudice to the rights of certain parties as set forth in paragraph 28 of this Final Order, and *provided further* that upon expiration of the periods of limitation set forth in paragraph 28 of this Final Order, the Debtors' payment of the Prepetition Obligations shall be deemed to be indefeasible, final and not subject to challenge.

**Cash Collateral Authorization and Adequate Protection**

9. *Authorized Use of Cash Collateral*. Subject to the terms and conditions of this Final Order and the DIP Facility Documents, the Debtors are authorized to use Cash Collateral through the Termination Date. Cash Collateral may be used only for the same purposes as permitted for loans under the DIP Facility, in compliance with the Budget and in accordance with the provisions of this Final Order. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in the Interim Order, this Final Order, or the DIP Facility Documents.

10. *Adequate Protection Liens*. Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, to the extent any Prepetition Obligations remain outstanding after entry of the

Interim Order and the closing of the DIP Facility, as adequate protection for the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral on account of the Debtors' use of Cash Collateral and other Diminution in Value of the Prepetition Collateral from the Petition Date, the Debtors were authorized to grant and have granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders (and such grant is hereby ratified, confirmed and approved on a final basis), continuing, valid, binding, enforceable and perfected postpetition security interests and liens (the "Adequate Protection Liens") in and on the Collateral. The Adequate Protection Liens will be deemed to constitute "Collateral" under the Prepetition Credit Agreement for all purposes, including, without limitation, such that any proceeds or consideration derived from the Adequate Protection Liens shall be deemed to constitute proceeds of Collateral, as treated under the Prepetition Credit Agreement.

11. *Priority of Adequate Protection Liens.* The Adequate Protection Liens shall be subordinate only to the DIP Liens and the Carve-Out Amount, but otherwise shall be first, prior, senior, perfected and superior to any other security interest in, lien on, or claim against, any of the Collateral. Except as provided in the previous sentence, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases, in a superseding proceeding, any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases. The Adequate Protection Liens shall not be subject to section 551 of the Bankruptcy Code.

12. *Adequate Protection Superpriority Claim.* To the extent any Prepetition Obligations remained outstanding after entry of the Interim Order and the closing of the DIP Facility, as further adequate protection for the interests of the Prepetition Lenders in the

Prepetition Collateral on account of the Debtors' use of Cash Collateral and other Diminution in Value of the Prepetition Collateral, the Prepetition Agent and the Prepetition Lenders were each granted (and such grant is hereby ratified, confirmed and approved on a final basis) a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code (collectively, the "Adequate Protection Superpriority Claim"). The Adequate Protection Superpriority Claim will be deemed to constitute "Collateral" under the Prepetition Credit Agreement for all purposes, including, without limitation, such that any proceeds or consideration derived from the Adequate Protection Superpriority Claim shall be deemed to constitute proceeds of Collateral, as treated under the Prepetition Credit Agreement. However, the Adequate Protection Superpriority Claim shall be subordinate to the DIP Superpriority Claim and the Carve-Out Amount and shall not extend to Avoidance Recoveries.

**Provisions Common to DIP Financing and
Use of Cash Collateral Authorizations**

13. Notwithstanding anything in the Interim Order or in this Final Order to the contrary, neither the DIP Liens, the Pre-Petition Liens, nor the Adequate Protection Liens shall have priority over the pre-petition liens of Branch Banking and Trust Company of Virginia ("BB&T") on, or the funds in, Business Investor's Deposit Account No. 5132485595 at BB&T (the "BIDA") that secure the obligations of Rowe and/or Rowe Furniture to BB&T with respect to certain standby letters of credit issued by BB&T for the benefit of Rowe and/or Rowe Furniture. BB&T shall maintain its lien position on the funds in the BIDA as it existed pre-

petition without impairment hereunder. As of the Petition Date, the BIDA had a balance of $737,951.08. The BIDA carries interest at a current annual rate of 3.590%.

14.    *Perfection of DIP Liens and Adequate Protection Liens.* This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule, or regulation of any jurisdiction to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle any of the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders to the priorities granted herein. The Debtors may execute, and the DIP Agent and Prepetition Agent are authorized to file or record, financing statements or other instruments to evidence the DIP Liens and the Adequate Protection Liens, and the Debtors are hereby authorized and directed, promptly upon demand by the DIP Agent or the Prepetition Agent to execute and file or record any such statements or instruments as the DIP Agent or Prepetition Agent may request. However, no such execution, filing, or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens. However, if the DIP Agent or Prepetition Agent, each in their sole discretion, shall choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such liens, all such documents shall be deemed to have been filed or recorded as of the Petition Date. A photocopy of this Final Order may, in the discretion of the DIP Agent or Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby directed to accept such copy of this Final Order for filing and recording.

15.     *Termination Date.*  All (a) DIP Obligations shall be immediately due and payable, and all Commitments (as defined in the DIP Credit Agreement) will terminate, and (b) authority to use the Cash Collateral shall cease, both on the date (the "<u>Termination Date</u>") that is the earliest to occur of:

(a)     the Maturity Date (as defined in the DIP Credit Agreement);

(b)     the occurrence of an Event of Default (as defined herein) after termination of the Remedies Notice Period (as defined herein); and

(c)     the effective date of any plan for any of the Debtors confirmed pursuant to Bankruptcy Code section 1129 that provides for indefeasible payment in full in accordance with the DIP Facility of all obligations due and owing under the DIP Facility.

16.     *Payment Upon Termination Date.*  All DIP Obligations shall be due and payable, without notice or demand, on the Termination Date. Any DIP Letter of Credit outstanding on the Termination Date shall be cash collateralized or backed as required by the terms of the DIP Credit Agreement.

17.     *Events of Default.*  The occurrence of any of the following events shall constitute Events of Default under this Final Order:

(a)     the appointment of a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the Debtors' business (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) in any of the Chapter 11 Cases;

(b)     the entry of an order dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(c)     the failure by the Debtors to perform, in any respect, any of the terms, conditions, covenants, or other obligations under the Interim Order and/or this Final Order; and

(d)     the occurrence of an "Event of Default" under the DIP Credit Agreement (a list of which Events of Default are attached hereto as Exhibit A).

18.     *Rights and Remedies Upon Event of Default.*  Immediately upon the occurrence of

an Event of Default, the DIP Agent may declare (a) all DIP Obligations owing under the DIP Credit Agreement to be immediately due and payable, (b) a termination, reduction or restriction of any commitment to extend credit to the Debtors to the extent any such commitment remains outstanding, and (c) a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral. The Debtors will have no right to use or seek to use Cash Collateral after the occurrence of an Event of Default; *provided*, *however*, that upon the DIP Agent providing five (5) business days' prior notice of such occurrence and during the continuance thereof (the "Remedies Notice Period"), (in each case given by facsimile to the Debtors, counsel to the Debtors, counsel to the Statutory Committees, and the United States Trustee), the Debtors may use Cash Collateral only to the extent necessary to meet payroll obligations and expenses essential to the preservation of the Debtors and their estates and as necessary for the Debtors and/or the Statutory Committees to seek an emergency hearing before the Court for the sole purpose of contesting whether an Event of Default has occurred. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred, the Debtors shall have no further right to use or seek to use Cash Collateral.

19. *Automatic Stay*. The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claim, and to perform such acts as the DIP Agent may request in its sole discretion to assure the perfection and priority of the DIP Liens, (b) the Debtors to pay, and the DIP Agent and the DIP Lenders to receive and apply, the amounts referred to in this Final Order, (c) the Debtors to grant the Adequate Protection Liens (to the extent any Prepetition Obligations remain outstanding) and the Adequate Protection Superpriority Claim and to perform such acts as the Prepetition Agent may request to assure the perfection and priority of the Adequate Protection

Liens and (d) the Debtors to pay, and the Prepetition Agent and the Prepetition Lenders to receive and apply, the amounts referred to in this Final Order.

20. *Maintenance of Collateral.* Until all DIP Obligations and all Prepetition Obligations have been fully and indefeasibly paid, the Debtors shall: (a) insure the Collateral in amounts and for the risks, and by the entities, as required under the DIP Facility and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court which has first been agreed to by the DIP Agent and the Prepetition Agent, or as otherwise required by the DIP Facility Documents.

21. *Proceeds.* If at any time prior to all DIP Obligations and the Adequate Protection Superpriority Claims having been fully and indefeasibly paid (including subsequent to the confirmation of any plan with respect to any or all of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d), then all of the cash proceeds derived from such credit or debt shall (a) immediately be turned over first to the DIP Agent in reduction of the DIP Obligations, and (b) thereafter, after such DIP Obligations have been fully and indefeasibly paid, to the Prepetition Agent (to the extent any Prepetition Obligations remain outstanding) to satisfy any remaining Prepetition Obligations as "proceeds of Collateral," pursuant to the provisions of the Prepetition Credit Agreement.

22. *Carve Out.* As used in this Final Order, "<u>Carve Out</u>" means, at any time of determination, (a) allowed administrative expenses payable pursuant to 28 U.S.C. § 1930(a)(6) and (b) allowed fees and expenses incurred by the Debtors and Statutory Committees pursuant to section 327 and 1103 of the Bankruptcy Code. For purposes of clause (b) of this paragraph 22, (i) if, at the time of reference, the Termination Declaration Date (as defined in the DIP Credit

Agreement) has not occurred, the amount of the Carve Out shall not be limited, except that no payment shall be made to any professional absent an order allowing such payment and (ii) if, at the time of reference, the Termination Declaration Date has occurred, the amount of the Carve Out shall be limited to the sum of one million two hundred fifty thousand dollars ($1,250,000) (the "Carve-Out Amount") upon entry of this Final Order; *provided* that fees and expenses that were incurred and remain unpaid at the time of the Termination Declaration Date or are incurred after the Termination Declaration Date may, upon allowance by the Court, be paid from the Carve-Out Amount.

23. *Limitations on the Carve-Out Amount.* No portion of the Carve Out, Collateral, Cash Collateral or proceeds under the DIP Facility may be used in respect of (a) preventing, hindering, or delaying any of the DIP Agent's, DIP Lenders', Prepetition Agent's or Prepetition Lenders' enforcement or realization upon any of the Collateral once an Event of Default has occurred, subject to the Debtors' and the Statutory Committees' rights under paragraph 18 of this Final Order; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of Collateral without the consent of the DIP Agent, (c) using or seeking to use any insurance proceeds without the consent of the DIP Agent, (d) incurring Indebtedness (as defined in the DIP Credit Agreement) without the prior consent of the DIP Agent, (e) objecting to or challenging in any way any claims, liens, Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral (including Cash Collateral), held by or on behalf of any of the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders, respectively, (f) asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors and employees or (g) prosecuting an objection to, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Obligations, the Prepetition Liens, or any other rights or interests of any of the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders; *provided*, that the Carve-Out Amount and such collateral proceeds and loans under the DIP Facility Documents may be used for allowed fees and expenses incurred by the Statutory Committees in investigating the validity, enforceability, perfection, or priority of the Prepetition Liens on or prior to December 1, 2006 and/or in investigating other claims concerning the Prepetition Obligations on or prior to December 31, 2006.

24.     *Payment of Compensation.*  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Statutory Committees or of any other person or shall affect the right of the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders, to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, and the same shall not reduce the Carve-Out Amount.

25.     *Section 506(c) and Equities of the Case Waiver; No Marshaling.* Neither the Debtors nor any other party in interest shall assert a claim under section 506(c) of the Bankruptcy Code for any costs or expenses incurred in connection with the preservation, protection, disposition, or enhancement of, or realization by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders upon the Collateral, the Prepetition Collateral, or

any collateral subject to adequate protection liens.  The DIP Lenders or the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.  No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Prepetition Agent or the Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

26. *Survival.* The terms and provisions of this Final Order, and any actions taken pursuant hereto shall survive the entry of any court order (a) confirming a plan of reorganization, and the DIP Obligations shall not be discharged by the entry of any such order, each Debtor having hereby waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code with respect to the DIP Obligations; (b) converting any of the Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases.  The terms and provisions of this Final Order concerning the Prepetition Agent's, the Prepetition Lenders', the DIP Agent's and the DIP Lenders' claims, liens, security interests, and other protections granted pursuant to this Final Order, including such terms and provisions concerning the Adequate Protection Liens, the Adequate Protection Superpriority Claim, the DIP Obligations, the DIP Liens and the DIP Superpriority Claim, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided herein, until, in respect of the DIP Facility, all the DIP Obligations, including, without limitation, the DIP Superpriority Claim, have been indefeasibly paid in full and all commitments to extend credit thereunder have been terminated, and in respect of the Prepetition Facility, the Prepetition Obligations, including, without limitation, the Adequate Protection Superpriority Claim, have been indefeasibly paid in full.  The terms and provisions

concerning the indemnification of the DIP Agent and the DIP Lenders shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Credit Agreement, the indefeasible repayment of the DIP Obligations.

27. *Good Faith under Section 364(e) of the Bankruptcy Code.* The DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders have acted in good faith in connection with the Interim Order and this Final Order and their reliance on the provisions of the Interim Order and this Final Order is in good faith. Accordingly, if any provision of this Final Order is hereafter modified, vacated, or stayed by subsequent order of this Court or any other court for any reason, the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

28. *Reservation of Certain Third Party Rights and Bar of Challenges and Claims.* Nothing in this Final Order or the DIP Facility Documents shall prejudice the rights of the Statutory Committees to seek to object to or challenge (a) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Prepetition Agent in and on the Prepetition Collateral, or (b) the validity, allowability or priority of the Prepetition Obligations and Prepetition Liens, *provided, however*, that, unless one or both of the Statutory Committees commences, as appropriate, a contested matter or an adversary proceeding raising such objection or challenge on or before December 1, 2006 (with respect to a challenge or objection to the Prepetition Liens) and December 31, 2006 (with respect to any other claims concerning the Prepetition Obligations), all such challenges and objections shall be forever waived, released, barred and discharged, and the Prepetition Obligations shall be allowed as claims in full and, to the extent of the value of the Prepetition Collateral on the Petition Date, shall be allowed as

secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases. Only the Statutory Committees, if either or both of them have properly initiated a contested matter or an adversary proceeding challenging the Prepetition Obligations or the Prepetition Liens prior to the expiration of the period of limitations specified in this paragraph 28, shall be permitted to participate in the prosecution of such proceeding or action, and all other parties in interest shall be deemed to be irrevocably bound in full to each and every one of the stipulations and findings contained in paragraph E of this Final Order. No such period of limitation shall be extended without the written consent of the Prepetition Agent. Upon the expiration of such applicable period, to the extent not otherwise waived or barred, any and all objections or challenges (including, but not limited to, those under sections 502, 506, 544, 547, 548 and/or 552 of the Bankruptcy Code or otherwise), by any party (including, without limitation, the Statutory Committees and any chapter 11 or chapter 7 trustee, or examiner, appointed in any Chapter 11 Case) to the validity, sufficiency, extent, perfection, priority, amount or refinancing of, or seeking the avoidance, recharacterization or subordination of, any of the Prepetition Liens or the Prepetition Obligations and any payments thereon or otherwise asserting claims against any of the Prepetition Agent, the Prepetition Lenders, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of or related to the Prepetition Credit Agreement, Prepetition Credit Documents or any related documents shall be forever waived, released, barred and discharged and the Debtors' Stipulations set forth in paragraph E of this Final Order shall thereafter be deemed to be binding on all parties in interest, including, without limitation, any Statutory Committees or any other court appointed committee, including, without limitation, any committee of equity holders. The Statutory Committees are hereby granted standing to commence a contested matter or adversary

proceeding as contemplated by this paragraph 28 of this Final Order; *provided*, *however*, that notwithstanding the grant of standing to the Statutory Committees, the Court expressly does not find that any claims that may be brought by the Statutory Committees pursuant to this paragraph 28 of this Final Order are or would be meritorious; and *provided further* that the Prepetition Agent and Prepetition Lenders expressly reserve all rights, claims and defenses.

29.     *Proofs of Claim.*  None of the DIP Lenders will be required to file proofs of claim in any of the Chapter 11 Cases.  The Prepetition Agent is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) aggregate proofs of claim in each of the Chapter 11 Cases on behalf of all of the Prepetition Lenders in respect of the Prepetition Obligations. Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases shall not apply to the Prepetition Lenders in respect of the Prepetition Obligations.

30.     *Rights of Access and Information.*  Without limiting the rights of access and information afforded the DIP Agent and DIP Lenders under the DIP Facility Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and the DIP Lenders reasonable access to the Debtors' premises and their books and records in accordance with the DIP Facility Documents and shall reasonably cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement.

31.     *No Modification of Final Order*.  The Debtors shall not seek or consent to, directly or indirectly, without the prior written consent of the DIP Agent and the Prepetition Agent (a) any modification, stay, vacatur or amendment to this Final Order; (b) any order allowing use of Cash Collateral of the Prepetition Agent or the DIP Agent; (c) a priority claim

for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases, equal or superior to the DIP Superpriority Claim or the Adequate Protection Superpriority Claim, other than the Carve-Out Amount; or (d) any lien on any of the Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Facility Documents, or with priority equal or superior to the Adequate Protection Liens, except with the consent of the Prepetition Agent requisite under the Prepetition Credit Agreement.

32. *Indemnification.* The Debtors shall indemnify and hold harmless the DIP Agent, the DIP Lenders and their respective shareholders, directors, agents, officers, subsidiaries and affiliates, successors and assigns, and professional advisors from and against any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages and reasonable expenses of every nature and character arising out of the DIP Facility Documents or the transactions contemplated thereby and by this Final Order as provided in and pursuant to the terms of the DIP Credit Agreement and as further described therein and herein, except to the extent that such liabilities, losses, damages or expenses arise out of such person's gross negligence or willful misconduct, or out of a final order allowing a successful challenge to the Prepetition Claims or Prepetition Liens.

33. *Final Order Controls.* To the extent any terms and conditions of the Interim Order or any of the DIP Facility Documents are in conflict with the terms and conditions of this Final Order, the provisions of this Final Order shall control.

34. *Suits Against Agents or Lenders in Their Capacity.* For the avoidance of doubt,

suits or actions referred to in section 8.1(o)(xi) of the DIP Credit Agreement shall relate only to the DIP Agent or the DIP Lenders in their capacity as DIP Agent or DIP Lenders under the DIP Facility Documents.

35. *Certain Rights Preserved.* Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the DIP Agent, DIP Lenders, Prepetition Agent and/or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the DIP Lenders or the Prepetition Lenders to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Lenders or the Prepetition Lenders or (c) any rights, claims or privileges (whether legal, equitable or otherwise) of either of the Statutory Committees to seek contribution, or any other appropriate remedy from any of the Debtors or Guarantors, and any rights or remedies of any other parties in relation to such rights, claims or privileges.

36. *Failure to Seek Relief.* The DIP Agent's, the DIP Lenders', the Prepetition Agent's or the Prepetition Lenders' failure to seek relief or otherwise exercise its or their rights and remedies under the DIP Facility Documents or, as the case may be, the Prepetition Credit Documents, documents related thereto, the Interim Order or this Final Order shall not constitute a waiver of any of the DIP Agent's, the DIP Lenders', the Prepetition Agent's or the Prepetition

Lenders' rights hereunder, thereunder or otherwise.

37. *Amendments to DIP Facility.* The DIP Credit Agreement or any other DIP Facility Document may from time to time be amended by the parties thereto without notice or a hearing if (a) the amendment is beneficial to the Debtors or is not prejudicial in any material respect to the rights of third parties, (b) a copy of the amendment is provided to the United States Trustee and Statutory Committees on either (i) if the amendment is deemed by the Debtors and DIP Agent to be emergent, at least three (3) hours' notice by electronic mail to counsel for the Statutory Committees (if to the Rowe Furniture Committee, to:   slevine@lowenstein.com; bbuechler@lowenstein.com; and dfoley@mcguirewoods.com.  If to the Storehouse Committee, to:  bmiller@oshr.com and tgoren@oshr.com); and if the Statutory Committees do not object to the proposed amendment within such time, the Debtors and DIP Agent shall be authorized to effectuate such amendment; (ii) if the amendment is deemed not to be emergent, at least three (3) business days' notice.

38. *Effect of Final Order.*  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution thereof.  Except as otherwise provided herein, the terms and provisions of this Final Order shall, immediately upon execution by this Court, become valid and binding upon the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, all other creditors of any of the Debtors, the Statutory Committees or any other court appointed committee, including, without limitation, any committee of equity holders, appointed in the Chapter 11 Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases or in any Successor Cases as a legal representative of the Debtors' estates from and after

execution of this Final Order by the Court.

39.     *Retention of Jurisdiction.* The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

40.     *Reports and Notices.* Except as set forth in this Final Order, all reports and/or notices required to be given hereunder or pursuant to the DIP Facility Documents (a) by the Debtors to the DIP Agent, or (b) by the DIP Agent to the Debtors, shall be transmitted by the Debtors to counsel for the Statutory Committees (if to the Rowe Furniture Committee, to: Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention:  Sharon L. Levine, Esq. (if by e-mail to:  slevine@lowenstein.com); if to the Storehouse Committee, to: Otterbourg, Steindler, Houston and Rosen, PC, 230 Park Avenue, New York, New York 10169, Attention: Brett Miller, Esq. (if by e-mail to:  bmiller@oshr.com)) upon receipt from the DIP Agent or simultaneously when the Debtors send a notice or report to the DIP Agent.


Dated:  _October 16, 2005, 2006_          _/s/ Kevin R. Huennekens_____
                                          UNITED STATES BANKRUPTCY JUDGE


PREPARED BY:


WILEY REIN & FIELDING LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia 22102
(703) 905-2800


By:        _/s/ Dylan G. Trache_____
           H. Jason Gold, Va. Bar No. 19117
           Valerie P. Morrison, Va. Bar No. 24565
           Robert J. Butler, Va. Bar No. 67018
           Dylan G. Trache, Va. Bar No. 45939

Counsel to the Debtors and Debtors-in-Possession

SEEN AND AGREED:

BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, Massachusetts 02110
(617) 951-8422

By:     /s/ Julia Frost-Davies (by DGT w/ permission)
          Julia Frost-Davies, Esq.

Counsel to General Electric Capital Corporation


And


LOWENSTEIN SANDLER, PC
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500


By:     /s/ Sharon Levin (by DGT w/ permission)
          Kenneth A. Rosen, Esq.
          Sharon Levine, Esq.

Counsel to the Official Committee of
Unsecured Creditors for Rowe Furniture, Inc.


And


OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, New York 10169


By:     /s/ Todd M. Goren (by DGT w/ permission)
          Brett H. Miller, Esq.
          Todd M. Goren, Esq.

Counsel to the Official Committee of
Unsecured Creditors for Storehouse, Inc.

**8.      EVENTS OF DEFAULT; RIGHTS AND REMEDIES**

          8.1      Events of Default.  Notwithstanding the provisions of Section 362 of the Bankruptcy Code and without notice, application or motion to, hearing before, or order of the Bankruptcy Court or any notice to any Credit Party, and subject to Section 8.2(b), the occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "Event of Default" hereunder:

          (a)      Any Borrower (i) fails to make any payment of principal of, or interest on, or Fees owing in respect of, the Loans or any of the other Obligations when due and payable, or (ii) fails to pay or reimburse Agent or Lenders for any expense reimbursable hereunder or under any other Loan Document within ten (10) days following Agent's or such Lenders' demand for such reimbursement or payment of expenses (it being understood that a Lender may only demand such reimbursement or payment of expenses to the extent that such reimbursement or payment of expenses is owed to such Lender).

          (b)      Any Credit Party fails or neglects to perform, keep or observe any of the provisions of Sections 1.4, 1.8 1.19, 1.22, 1.23, 5.4(a), 5.12, 5.13, 5.14, or 6, or any of the provisions set forth in Annexes C or G, respectively.

          (c)      Any Borrower fails or neglects to perform, keep or observe any of the provisions of Section 4.1 or any provisions set forth in Annexes E or F, respectively, and the same shall remain unremedied for three (3) Business Days or more.

          (d)      Any Credit Party fails or neglects to perform, keep or observe any other provision of this Agreement or of any of the other Loan Documents (other than any provision embodied in or covered by any other clause of this Section 8.1) and the same shall remain unremedied for thirty (30) days or more.

          (e)      Except for defaults occasioned by the filing of the Chapter 11 Cases and defaults resulting from obligations with respect to which the Bankruptcy Code prohibits any Credit Party from complying or permits any Credit Party not to comply, a default or breach occurs under any other agreement, document or instrument entered into either (x) Pre-Petition and which is affirmed after the Petition Date or is not subject to the automatic stay provisions of Section 362 of the Bankruptcy Code, or (y) Post-Petition, to which any Credit Party is a party that is not cured within any applicable grace period therefor, and such default or breach (i) involves the failure to make any payment when due in respect of any Indebtedness or Guaranteed Indebtedness (other than the Obligations) of any Credit Party in excess of $500,000 in the aggregate (including (x) undrawn committed or available amounts and (y) amounts owing to all creditors under any combined or syndicated credit arrangements), or (ii) causes, or permits any holder of such Indebtedness or Guaranteed Indebtedness or a trustee to cause, Indebtedness or Guaranteed Indebtedness or a portion thereof in excess of $500,000 in the aggregate to become due prior to its stated maturity or prior to its regularly scheduled dates of

payment, or cash collateral in respect thereof to be demanded, in each case, regardless of whether such default is waived, or such right is exercised, by such holder or trustee.

(f) Any information contained in any Borrowing Base Certificate is untrue or incorrect in any respect (other than (i) inadvertent, immaterial errors not exceeding $100,000 in the aggregate in any Borrowing Base Certificate) and (ii) errors understating the Borrowing Base), or any representation or warranty herein or in any Loan Document or in any written statement, report, financial statement or certificate (other than a Borrowing Base Certificate) made or delivered to Agent or any Lender by any Credit Party is untrue or incorrect in any material respect as of the date when made or deemed made.

(g) Assets of any Credit Party with a fair market value of $500,000 or more are attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors of any Credit Party and such condition continues for thirty (30) days or more.

(h) [Intentionally Omitted].

(i) [Intentionally Omitted].

(j) A final judgment or judgments for the payment of money in excess of $500,000 in the aggregate at any time are outstanding against one or more of the Credit Parties (which judgments are not covered by insurance policies as to which liability has been accepted by the insurance carrier), and the same are not, within thirty (30) days after the entry thereof, discharged or execution thereof stayed or bonded pending appeal, or such judgments are not discharged prior to the expiration of any such stay.

(k) Any material provision of any Loan Document for any reason ceases to be valid, binding and enforceable in accordance with its terms (or any Credit Party shall challenge the enforceability of any Loan Document or shall assert in writing, or engage in any action or inaction based on any such assertion, that any provision of any of the Loan Documents has ceased to be or otherwise is not valid, binding and enforceable in accordance with its terms), or any Lien created under any Loan Document ceases to be a valid and perfected first priority Lien (except as otherwise permitted herein or therein) in any of the Collateral purported to be covered thereby.

(l) Any Change of Control occurs.

(m) Any event occurs (other than the Storehouse Chain Sale), whether or not insured or insurable, as a result of which revenue-producing activities cease or are substantially curtailed at facilities of Borrowers generating more than 20% of Borrowers' consolidated revenues for the Fiscal Year preceding such event and such cessation or curtailment continues for more than thirty (30) days.

(n) Any Event of Default under and as defined in any Mortgage which would reasonably be expected to impair or adversely affect Agent's ability to realize upon the Real Estate subject to such Mortgage shall occur and be continuing.

(o)     The occurrence of any of the following in any Chapter 11 Case:

(i)     the bringing of a motion, taking of any action or the filing of any plan of reorganization or disclosure statement attendant thereto by a Borrower in any Chapter 11 Case: (w) to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Agreement; (x) to grant any Lien other than Permitted Encumbrances upon or affecting any Collateral; (y) except as provided in the Interim or Final Order, as the case may be, to use cash collateral of Agent under Section 363(c) of the Bankruptcy Code without the prior written consent of the Agent and the Requisite Lenders; or (z) any other action or actions adverse to the Agent and the Lenders or their rights and remedies hereunder or their interest in the Collateral;

(ii)     the filing of any plan of reorganization or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure statement, by a Borrower or any other Person to which the Agent and the Requisite Lenders do not consent or otherwise agree to the treatment of their claims;

(iii)     the entry of an order in any of the Chapter 11 Cases confirming a plan or plans of reorganization that does not contain a provision for termination of the Commitments and repayment in full in cash of all of the Obligations under this Agreement on or before the effective date of such plan or plans;

(iv)     the entry of an order amending, supplementing, staying, vacating or otherwise modifying the Loan Documents or the Interim Order or the Final Order without the written consent of all of the Lenders or the filing of a motion for reconsideration with respect to the Interim Order of the Final Order;

(v)     the Final Order is not entered immediately following the expiration of the Interim Order;

(vi)     the payment of, or application for authority to pay, any Pre-Petition claim without the Agent's and Requisite Lenders' prior written consent unless otherwise permitted under the Order;

(vii)     the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against the Agent, any Lender or any of the Collateral or against the Prior Agent, any Prior Lender or any Collateral (as defined in the Pre-Petition Loan Agreement);

(viii)     the appointment of an interim or permanent trustee in any Chapter 11 Case or the appointment of a receiver or an examiner in any Chapter 11 Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of such Borrower; or the sale without the Agent and Lenders' consent, of all or substantially all of such Borrowers' assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Chapter 11 Cases, or otherwise that does not provide

for payment in full in cash of the Obligations and termination of Lenders' commitment to make Loans;

(ix) the dismissal of any Chapter 11 Case, or the conversion of any Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code or any Credit Party shall file a motion or other pleading seeking the dismissal of any Chapter 11 Case under Section 1112 of the Bankruptcy Code or otherwise;

(x) the entry of an order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a Lien on any Collateral, or (y) with respect to any Lien of or the granting of any Lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a Material Adverse Effect;

(xi) the commencement of a suit or action against Agent or any Lender and, as to any suit or action brought by any Person other than a Credit Party or a Subsidiary, officer or employee of a Credit Party, the continuation thereof without dismissal for thirty (30) days after service thereof on Agent or such Lender, that asserts or seeks by or on behalf of a Borrower, the Environmental Protection Agency, any state environmental protection or health and safety agency, any official committee in any Chapter 11 Case or any other party in interest in any of the Chapter 11 Cases, a claim or any legal or equitable remedy;

(xii) the entry of an order in any Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Agreement or the other Loan Documents;

(xiii) the failure of any Borrower to perform any of its obligations under the Interim Order or the Final Order;

(xiv) the entry of an order in any of the Chapter 11 Cases granting any other super priority administrative claim or Lien equal or superior to that granted to Agent, on behalf of itself and Lenders;

(xv) the Bankruptcy Court shall not have entered the Final Order on or before the date that is 30 days after the Petition Date permitting the extensions of credit hereunder and the other transactions contemplated hereby; or

(xvi) the entry of an order in any Chapter 11 Case terminating exclusivity (unless such order is actively contested by the Borrowers).

## **Exhibit B**

Landlord:  BlackRock Realty
Leasehold Location:
32 Commerce Court North
South Brunswick, New Jersey

Landlord:  CFH Realty III/Teakwood, L.P
Leasehold Location:
Teakwood Village Shopping Center
8111 Burnet Road
Austin Texas 78757

Landlord:  TJ Palm Beach Associates Limited Partnership
Leasehold Location:
The Mall at Wellington Green
10300 West Forest Hill Boulevard
Wellington, Florida

Landlord:  TRG Charlotte LLC
Leasehold Location:
Northlake Mall
6801 Northlake Mall Drive
Charlotte, North Carolina

Landlord:  Stoney Point Fashion Park Associates, L.L.C.
Leasehold Location:
Stony Point Fashion Park
9200 Stony Point Parkway
Richmond, Virginia

Landlord:  Federal Realty Investment Trust
Leasehold Location:
Idylwood Plaza
Intersection of Leesburg Pike and Pimmit Drive (7505 Leesburg Pike)
Falls Church, Virginia

Landlord:  Street Retail, Inc.
Leasehold Location:
Pentagon Row, Intersection of Army Navy Drive and South Joyce Street
(1101 S. Joyce Street)
Arlington, Virginia

Landlord:  Majestic-Norcross II and The Northwestern Mutual Life Insurance Company
Leasehold Location:
Majestic Norcross Center
2055 Nancy Hanks Drive
Norcross, Georgia

Landlord:  Main Street Properties, L.P.
Leasehold Location:
4121 Main Street
Manayunk, Pennsylvania

Landlord:  Gateway Center Associates, Ltd.
Leasehold Location:
The Gateway Center
7170 Orchard Lake Road
West Bloomfield, Michigan

Landlord:  Bayer Retail Company LLC
Leasehold Location:
Store 294
Birmingham, Alabama