UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
    THE ROWE COMPANIES         )    Case No. 06-11142-SSM
                                          )    Chapter 11
              Debtor     )

**MEMORANDUM OPINION**

      Before the court are objections by the debtor in possession to Claim No. 4200293 filed by Wright's Sawmill, Inc. ("Wright's Sawmill"), in the amount of $45,219.02, and to Claims No. 4200360 and 4290025 filed by Tietex International, Ltd. ("Tietex"), in the amount of $202,246.50 and $63,604.00, respectively.[1]  A hearing was held on October 19, 2007, at which the court heard the contentions of the parties and took the issues under advisement.  The ground of objection is the same for each claim, namely that the goods on which the claims are based were not shipped to the debtor, but to its subsidiary, Rowe Furniture, Inc.  For the reasons stated, the objections will be sustained.

Background

      Prior to the filing of its chapter 11 petition in this court on September 18, 2006, The Rowe Companies ("the debtor" or "TRC") was a publicly-traded holding company that owned all of the stock in two operating subsidiaries, Rowe Furniture, Inc. ("RFI"), a furniture manufacturer, and Storehouse, Inc. ("Storehouse"), a home furnishings retailer. According to the

---

[1] The objection to the Wright Sawmill claim and the larger of the Tietex claims is included in the debtor's Sixth Omnibus objection to claims.  The objection to the smaller Tietex claim is included in the debtor's Seventh Omnibus objection to claims.

1

affidavit filed in support of the first-day motions, the debtor's original name when it began business in 1946 was Rowe-Jordan Furniture. It was renamed Rowe Furniture Corporation in 1952. It acquired Storehouse in 1999, at which time the debtor's name was changed to The Rowe Companies. Although the affidavit is not clear on the point, it suggests that RFI was set up as a separate corporation at that time. The debtor's corporate headquarters was located in McLean, Virginia. RFI's manufacturing plants were located in Elliston, Virginia; Salem, Virginia; Poplar Bluff, Missouri; and Morehouse, Missouri. The headquarters of Storehouse was located in Atlanta, Georgia.

Both RFI and Storehouse filed chapter 11 petitions in this court on the same day as the debtor,[2] and the first-day motions filed in all three cases included a motion for joint administration. That motion was eventually denied, and the cases have proceeded separately, with RFI's case ultimately being converted to chapter 7, while the debtor and Storehouse remain in chapter 11. Some early notices given in the case before the motion for joint administration was denied (in particular, the notice of first day motions) listed the debtor as "The Rowe Companies, Inc., *et al.*" and contained the designation "jointly administered." Additionally, a creditor viewing the docket sheet available through the court's PACER system or through the "Mega Cases" link on the court's Internet web site[3] would see the debtor listed as "The Rowe Companies, Debtor *dba* Rowe Furniture Corporation."[4] However, the notice of meeting of

---

[2] RFI was filed as Case No. 06-11143-SSM, while Storehouse was filed as Case No. 06-11144-SSM.

[3] *See* http://www.vaeb.uscourts.gov/megadkt/0611142.html

[4] The "dba" (doing business as) tag on the docket sheet should probably be "fka" (formerly known as) instead. The petition simply listed "Rowe Furniture Corporation" in the space
(continued...)

creditors and the notice of claims bar date mailed to creditors listed only the debtor's name ("The Rowe Companies"), with separate forms of notice being mailed in the RFI and Storehouse cases.

Tietex filed a priority claim in the debtor's case on January 24, 2007, in the amount of $63,604.00, for goods shipped to the debtor within 20 days of the chapter 11 filing, and a general unsecured claim on February 5, 2007, in the amount of $202,246.54, for goods sold during the period from July 19, 2006 through September 12, 2006.[5]  Attached to the proof of claim are invoices supporting each of the shipments.  The invoices show the purchaser as "Rowe Companies, The (Don't Use)"[6] at 2121 Gardiner Street, Elliston, Virginia, with shipments being made in some cases to the Elliston, Virginia, address, and in some instances to 2700 Central Avenue, Poplar Bluff, Missouri.

Wright's Sawmill filed an unsecured proof of claim in both the debtor's case and RFI's case on January 10, 2007, in the amount of $45,219.02 for goods sold during the period June 14, 2006 through September 25, 2006.  The invoices attached to the proof of claim reflect that the entity billed was "Himmelburg-Harris/Rowe Furniture" in Morehouse, Missouri.  The shipping address is shown as "Himmelburg-Harris/Rowe" in Morehouse, Missouri, and the delivery receipts uniformly bear the legend "Himmelberger-Harrison Company, Inc."

---

[4](...continued)
provided for "All Other Names used by the Debtor in the last 8 years" without an indication of whether that was a trade name or former name.  The affidavit submitted in support of the first day motions, however, suggests the latter.

[5]  The $202,246.54 *includes* the $63,604.00 for which priority is claimed.

[6]  Beginning August 31, 2006, the "Don't Use" notation (which in context appears to be a reference to the article "The") was dropped.

The debtor does not deny that the goods were shipped but it does deny liability on the ground that in each case the customer was RFI, not the debtor.

Discussion

I.

The evidence at the hearing established that the relationship of the debtor to RFI is that of shareholder, with the debtor owning 100 percent of the shares of RFI.  It is a fundamental principle of corporate law that a corporation is an entity separate and distinct from its shareholders, and that the shareholders of a corporation are not liable for its debts in the absence of wrongdoing.  4B, Michie's Jurisprudence, Corporations, §§ 5 and 137 (1999 repl. vol.); *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976).  It is true that in some instances courts will "pierce the corporate veil"—that is, disregard the separate existence of the corporation—and impose liability for the corporation's debts on a shareholder.  *DeWitt*, 540 F.2d at 683.  However, the power to pierce the corporate veil is exercised reluctantly and cautiously, and the burden of establishing a basis for disregard of the corporate fiction rests on the party asserting the claim.  *Id.*  The factors that will typically support the piercing of the corporate veil include fraud, undercapitalization, domination of the corporation by a single shareholder, and disregard of corporate formalities.  *Id.* at 684-87.  However, "a single factor will rarely, if ever, be sufficient to justify the drastic remedy of piercing the corporate veil," and the trier of fact "should look at all the circumstances in each case."  *In re County Green Ltd. Partnership*, 604 F.2d 289, 292 (4th Cir. 1979) (reversing district court and reinstating order of bankruptcy court which had declined to pierce the corporate veil).

The mere fact that the shareholder is itself a corporation or holding company does not compel a different result:

> There must be something more than identity of officers and stock ownership in corporate setups in order to disregard the corporate fiction.  It must appear that it was organized for a fraudulent purpose or that some injury has resulted to someone from the transaction, something of fraud, something of illegality or wrongdoing, or something where the moving party has cause for complaint in connection with the transaction.... *The mere fact the stock in one company is owned by another company does not justify invoking the [mere instrumentality] rule.... Something more is needed*, such as fraud, illegality, or wrongdoing which produced the injury or complaint, otherwise the corporate entity will stand.

*Brown v. Margrande Compania Naviera, S.A.*, 281 F.Supp. 1004, 1005-06 (E.D. Va. 1968) (emphasis added).  *Brown* quoted with approval from the decision in *Overstreet v. Southern Railway Co.*, 371 F.2d 411 (5th Cir. 1967), *cert. denied*, 387 U.S. 912, 87 S.Ct. 1700, 18 L.Ed.2d 634 (1967).  That case involved a plaintiff who was injured at a railroad crossing by a locomotive with the legend "Southern" written on its side and operated by a wholly-owned subsidiary of Southern Railway Company.  Although the court acknowledged that "the constituent members of the Southern Railway system constitute a 'family,'" it declined to find the parent corporation liable solely on that basis and held that "the corporate fiction should not be disregarded because of identity of corporate names, stockholders and officers and the fact of ownership of capital stock in one corporation by another."  *Id.*, 371 F.2d at 412.

*Overstreet*, to be sure, was a tort case and therefore did not raise an issue of holding out.  In the context of commercial dealings, courts have invoked the doctrine of equitable estoppel to impose liability on one who holds himself out, or knowingly allows another to hold him out, as a partner of the contracting entity.  *See*, *e.g., Hartford Acc. & Indem. Co. v. Oles*, 152 Misc. 876, 879, 274 N.Y.S. 349, 355-56 (1934); *In re Ward*, 6 B.R. 93, 95 (Bankr. M.D. Fla. 1980).  There

is no reason why the same principle would not apply to members of a corporate family who make no distinction among themselves in their external dealings with customers, such as using only a general form of the company name (e.g., "Acme" instead of "Acme Tool & Design, Inc."). In this connection, the doctrine of equitable estoppel is well-recognized by Virginia law. As explained in a prior opinion of this court,

> The general rule of equitable estoppel, or, as it is frequently called, estoppel in pais, is that when a person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby.

*In re Royal Meadows Stables, Inc.*, 187 B.R. 516, 518 (Bankr. E.D. Va. 1995), quoting *Thomasson, Adm'r v. Walker*, 168 Va. 247, 256, 190 S.E. 309, 312-313 (1937). Equitable estoppel "flows from the principle 'that when one of two innocent persons, each of whom is guiltless of an intentional moral wrong, must suffer a loss, it should be borne by that one of him who by his conduct has rendered the injury possible.'" *Id.*, 187 B.R. at 518. Thus, if sufficient evidence were before the court showing not only that the debtor and RFI presented themselves as a single entity to the outside world, but that a particular creditor reasonably relied to its detriment on the apparent identity. The difficulty is that while Tietex and Wright's Sawmill make generalized assertions that the debtor and RFI held themselves out as a single entity, they have not presented evidence that would allow the court to conclude that the debtor is equitably estopped from asserting its separate existence from RFI. Such evidence might consist, for example, of purchase orders or advertisements in trade publications. Even then, in order for

6

liability to attach to the debtor, the evidence would have to show that a particular supplier, in shipping goods to RFI without payment in advance or payment on delivery, relied specifically on the assets or credit rating of the debtor. No such evidence has been presented. Accordingly, the court will sustain the debtor's objection to the allowance of the Tietex and Wright's Sawmill claims.

II.

Quite separate from the issue of whether creditors were misled in their dealings with the debtor and its subsidiaries is the question of whether they were misled, in connection with the bankruptcy filings, into filing their proofs of claim in the wrong case. The issue does not arise with respect to the claim of Wright's Sawmill, since Wright's Sawmill filed identical claims in both cases, and disallowance of its claim against the debtor does not prejudice its claim against RFI. Tietex, however, filed a claim only in the debtor's case, and the time for filing proofs of claim in RFI's case has expired. The trustee in the RFI case has not consented to a transfer of the claim from the debtor's case to the RFI case. Whether equitable tolling[7] would constitute a sufficient basis to allow Tietex to file its claims out of time in the RFI case is better determined in a procedural context in which the RFI trustee is properly a party, namely a motion in the RFI case to allow the claims to be treated as having been timely filed in that case. Nothing in this

---

[7] *See Young v. United States*, 535 U.S. 43, S.Ct. 1036, 152 L.Ed.2d 79 (2002), in which the Supreme Court explained that "limitations periods are customarily subject to equitable tolling" and noted that the situations in which equitable tolling has been applied include those "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id*. at 49-50,122 S.Ct. at 1040-41.

opinion, therefore, is intended to express an opinion as to whether the Tietex claims should, on the facts presented here, be deemed timely filed in the RFI case.

Separate orders will be entered disallowing the Tietex and Wright's Sawmill claims in this case, but without prejudice to their allowance, if otherwise proper, in the RFI case.

Date:   December 13, 2007                                 _____
                                                                                   Stephen S. Mitchell
Alexandria, Virginia                                                  United States Bankruptcy Judge

Copies to:

Dylan G. Trache, Esquire
Wiley Rein & Fielding, LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA  22102
Counsel for the debtor in possession

Madeline A. Trainor, Esquire
Cyron & Miller, LLP
100 N. Pitt Street, suite 200
Alexandria, VA  22314
Counsel for Wright's Sawmill, Inc.

Tietex International, Ltd.
c/o Lisa Sumner, Esquire
Poyner & Spruill LLP
301 South College Street, Suite 2300
Charlotte, NC   28202

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA  22314